IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PLAINTIFF(S)<br>Chris Pacifico | ) | CIVIL ACTION No.:  2:26-cv-1342-DCN-SVH |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | (Jury Trial Requested) |
| DEFENDANT(S) | ) | |
| Scientific Research Corporation | ) | |
| | ) | |

### Introduction

Defendant removed an injured employee from active work, ignored his medical restrictions, and then used leave as a substitute for the obligations the law imposes. It allowed a known hostile actor to target Plaintiff after his injury, dismissed his complaints, and made no meaningful effort to preserve his employment. When removal could no longer be justified, Defendant invoked shifting and pretextual explanations while continuing the same work with new personnel. This case is about what happens when an employer chooses convenience over compliance.

### Complaint and Jury Demand

Plaintiff Chris Pacifico ("Plaintiff"), by and through counsel, alleges:

### Jurisdiction and Venue

1.     This action arises under: 1). The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; 2). The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; 3). The South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 et seq.; and 4). And related South Carolina common law.

2.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

3.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this District because the events giving rise to this action occurred in Charleston County, South Carolina.

5.     Plaintiff timely filed a Charge of Discrimination and received a Notice of Right to Sue.

**Parties**

6.     Plaintiff is a resident of Goose Creek, South Carolina.

7.     Defendant Scientific Research Corporation ("SRC") is a defense contractor operating in South Carolina.

8.     At all relevant times, Defendant employed more than fifteen employees and was Plaintiff's employer.

**Facts**

9.     Plaintiff was originally hired by Defendant as a Logistician.

10.     Plaintiff performed Logistician duties satisfactorily for years.

11.     At Defendant's request, Plaintiff later transitioned into installation-related hardware support roles.

12.     Installation work was not the sole or original function of Plaintiff's employment.

13.     Plaintiff was working under a written employment agreement and/or contract governing compensation and continued employment.

14.     The contract contemplated continued employment for a defined period or project-based duration extending multiple years beyond July 2024.

15.     Plaintiff fully performed his contractual duties.

16.     Plaintiff sustained work-related spinal injuries affecting his neck and lower back.

17.    These impairments substantially limited lifting, bending, standing, and musculoskeletal functioning.

18.    Defendant was fully aware of Plaintiff's injuries and restrictions.

19.    Plaintiff provided medical documentation placing him on light duty.

20.    After Plaintiff's injury became known, government hardware lead Louis Colon began treating Plaintiff differently.

21.    Colon repeatedly yelled at Plaintiff, confronted him in his cubicle, and threatened removal.

22.    Colon demanded medical documentation despite lacking authority over Plaintiff's employment.

23.    Colon's hostility escalated after Plaintiff began working under medical restrictions.

24.    Plaintiff reported Colon's conduct to SRC management.

25.    SRC documented at least one complaint as Plaintiff "blowing off steam."

26.    SRC failed to investigate meaningfully or take corrective action.

27.    SRC allowed Colon's conduct to continue.

28.    Upon information and belief, Defendant had prior knowledge of similar complaints regarding Louis Colon's conduct toward coworkers, including reports of confrontational and passive-aggressive behavior predating Plaintiff's employment issues. These complaints were sufficiently serious that Colon had previously been removed from project responsibilities. At the time of those prior complaints, at least one reporting individual was working within Defendant's operational environment, including within Defendant's physical workspace, such that Defendant knew or should have known of Colon's conduct and its impact on personnel.

29.     Despite this history, Defendant failed to implement corrective measures, failed to meaningfully supervise or restrict Colon's authority, and instead permitted him to continue exercising substantial control over Plaintiff's day-to-day work. The same pattern of conduct previously reported by others was repeated with Plaintiff, culminating in adverse employment actions following Plaintiff's injury and complaints.

30.     Plaintiff has identified additional individuals with knowledge of Colon's prior conduct and treatment of personnel. However, those individuals remain within the same reporting structure or under Colon's authority, and their reluctance to provide statements reflects the ongoing control and influence Colon exercises within the project environment. This dynamic further underscores the atmosphere in which Plaintiff's complaints were made and disregarded.

31.     Colon's behavior created a hostile and intimidating work environment tied to Plaintiff's disability.

32.     On or about March 13, 2024, while performing installation work alone, Plaintiff sustained a distinct and severe spinal injury, including a disk tear. Despite the seriousness of this incident and its occurrence in the course of his assigned duties, Defendant failed to document, investigate, or otherwise formally recognize this injury. Instead, Defendant treated Plaintiff's subsequent medical restrictions as if they related solely to prior conditions, thereby obscuring the existence and impact of the March 2024 injury and further impairing any meaningful evaluation of Plaintiff's limitations or need for accommodation.

33.     By failing to distinguish between Plaintiff's prior condition and the March 2024 injury, Defendant deprived itself—and Plaintiff—of any legitimate, individualized assessment of his functional limitations. This failure directly undermined the interactive process and permitted

Defendant to rely on generalized and shifting justifications, rather than accurate medical information, when addressing Plaintiff's ability to work and potential reassignment.

34.     Notwithstanding its awareness of Plaintiff's medical restrictions, Defendant permitted, and in practice required, Plaintiff to perform physically demanding installation work, including working alone on installations that involved lifting, climbing, and confined physical positioning. It was during such work that Plaintiff sustained the March 2024 spinal injury. This conduct reflects a disregard for Plaintiff's known limitations and further demonstrates the absence of any coordinated or good-faith effort to accommodate his condition.

35.     On July 1, 2024, Plaintiff was informed that the government would no longer fund his position.

36.     Although Defendant initially represented that Plaintiff's position was impacted by "funding" decisions, the project itself remained active and continued to be staffed, including through the hiring or reassignment of multiple individuals to perform substantially similar work. The asserted "funding" rationale was therefore not a legitimate operational necessity, but instead functioned as a pretextual explanation for Plaintiff's removal following his injury and related complaints.

37.     Defendant's knowledge of Colon's conduct, combined with its failure to intervene, reflects not mere oversight, but a conscious disregard for the foreseeable consequences of permitting such behavior to continue.

38.     Plaintiff was removed from the NIWC project.

39.     Plaintiff was directed toward FMLA and short-term disability processing.

40.     Plaintiff did not resign.

41.     Plaintiff was removed from payroll and ceased receiving compensation.

42.    Plaintiff was never reinstated to paid employment.

43.    The project remained ongoing.

44.    Defendant hired multiple replacements.

45.    Plaintiff was never returned to his Logistician role or comparable work.

46.    At the time of removal, Defendant had vacant roles, including drafting and desk-based positions.

47.    Plaintiff was qualified for non-installation roles.

48.    Plaintiff had been transitioning toward drafting work.

49.    Defendant did not meaningfully evaluate reassignment before removal, despite the existence of vacant roles and full knowledge of Plaintiff's medical limitations.

50.    Defendant later offered a role approximately $60,000 below prior compensation.

51.    Defendant later offered a three-month temporary role.

52.    Neither role was comparable in compensation, duration, status, or career trajectory.

53.    Plaintiff was placed on FMLA after removal.

54.    Plaintiff was not restored to the same or equivalent position.

55.    Defendant has alternately characterized Plaintiff as terminated and as still employed.

56.    After FMLA and STD ended, Plaintiff was not paid wages.

57.    Defendant did not provide written notice clearly terminating employment.

58.    If Defendant maintains Plaintiff remained an employee during that period, wages were owed.

59.    If Defendant terminated Plaintiff, final wages and contractual compensation were owed.

60.    Defendant failed to pay wages due under either characterization.

61. At no point prior to Plaintiff's removal did Defendant engage in a meaningful, timely, or good-faith interactive process to identify reasonable accommodations or reassignment opportunities. Instead, Defendant allowed Plaintiff's condition, work restrictions, and complaints to accumulate without resolution, and only addressed reassignment or alternative roles after adverse action had already been taken and external pressure was applied.

### COUNT I – ADA Disability Discrimination (Termination)

62. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

63. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

64. Plaintiff was able to perform the essential functions of his position, with or without reasonable accommodation, including through reassignment to available non-physical or less physically demanding roles that existed at the time.

65. Defendant was aware of Plaintiff's disability and medical limitations through repeated communications, medical documentation, and internal discussions.

66. Defendant subjected Plaintiff to an adverse employment action by removing him from his position, eliminating his work, and ultimately removing him from payroll without reinstatement.

67. Plaintiff's disability was a motivating and determinative factor in Defendant's decision, as evidenced by reliance on his physical limitations, the timing of his removal following injury, and the absence of any legitimate performance-based justification.

68. Defendant's stated reasons for Plaintiff's removal were false, inconsistent, and pretextual.

69. As a direct and proximate result, Plaintiff suffered lost wages, loss of employment, and other damages.

## COUNT II – ADA Failure to Accommodate

70.     Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

71.     Plaintiff had a disability and required reasonable accommodation to continue working.

72.     Defendant had actual knowledge of Plaintiff's limitations and his need for accommodation.

73.     Plaintiff was qualified for multiple vacant positions within Defendant's organization, including roles that did not require physical installation work.

74.     Reasonable accommodations—including reassignment to vacant positions—were available and would not have imposed an undue hardship on Defendant.

75.     Defendant failed to engage in a good faith interactive process to identify and implement appropriate accommodations.

76.     Defendant instead delayed, ignored, or rejected reassignment opportunities, including roles for which Plaintiff was qualified.

77.     As a result, Defendant denied Plaintiff reasonable accommodation in violation of the ADA and caused Plaintiff economic and non-economic harm.

78.     Defendant failed to reassign Plaintiff to vacant positions for which he was qualified.

## COUNT III – ADA Hostile Work Environment

79.     Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

80.     Plaintiff was subjected to unwelcome harassment based on his disability and medical condition.

81.     The harassment included repeated yelling, intimidation, threats of removal, and demands for medical documentation by an individual without authority over Plaintiff's employment.

82.     This conduct intensified after Plaintiff's injury and while he was working under medical restrictions.

83.     The harassment was severe and pervasive, occurring repeatedly in the workplace and interfering with Plaintiff's ability to perform his job.

84.     Defendant knew or should have known of this conduct through Plaintiff's complaints and failed to take prompt or effective remedial action.

85.     As a result, Plaintiff was subjected to a hostile work environment in violation of the ADA.

86.     Defendant permitted severe and pervasive disability-based harassment.

### COUNT IV – ADA Retaliation

87.     Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

88.     Plaintiff engaged in protected activity by complaining about discriminatory treatment and harassment related to his disability and by requesting accommodation.

89.     Defendant was aware of Plaintiff's protected activity.

90.     Defendant subjected Plaintiff to materially adverse action, including removal from his role and denial of continued employment opportunities.

91.     There is a causal connection between Plaintiff's protected activity and the adverse action, as demonstrated by temporal proximity and escalating negative treatment following his complaints.

92.     Defendant's stated reasons were pretextual.

93.     As a result, Plaintiff suffered damages including lost wages and emotional distress.

## COUNT V – FMLA Interference

94.     Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

95.     Plaintiff was an eligible employee under the Family and Medical Leave Act.

96.     Defendant was a covered employer.

97.     Plaintiff was entitled to FMLA leave due to a serious health condition.

98.     Plaintiff provided sufficient notice of his need for leave.

99.     Defendant interfered with Plaintiff's FMLA rights by failing to restore him to the same or an equivalent position upon the conclusion of leave.

100.    Defendant instead eliminated Plaintiff's role and failed to reinstate him in any comparable position.

101.    As a result, Plaintiff lost compensation, benefits, and employment opportunities.

## COUNT VI – FMLA Retaliation

102.    Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

103.    Plaintiff engaged in protected activity by taking or seeking FMLA leave.

104.    Defendant was aware of Plaintiff's use of FMLA leave.

105. Defendant subjected Plaintiff to adverse employment action, including removal from his position and failure to return him to work.

106. The adverse action was causally connected to Plaintiff's FMLA leave, as evidenced by timing and Defendant's reliance on his medical condition.

107. Defendant's explanations are pretextual.

108. Plaintiff suffered damages as a direct result.

### COUNT VII – Breach of Contract

109. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

110. Plaintiff and Defendant entered into an employment agreement, express or implied-in-fact, under which Plaintiff would be compensated for his work and would not be removed absent legitimate cause or project-based necessity.

111. Plaintiff fully performed his obligations under the agreement.

112. Defendant breached the agreement by removing Plaintiff from his position without cause while the project continued.

113. Defendant further breached by failing to provide agreed compensation and by failing to maintain Plaintiff's employment status consistent with the agreement.

114. Defendant's actions were not justified by project termination, funding loss, or performance deficiencies.

115. As a result, Plaintiff suffered economic damages.

### COUNT VIII – Breach of Implied Covenant of Good Faith and Fair Dealing

116.    Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

117.    Plaintiff's employment agreement included an implied covenant of good faith and fair dealing.

118.    Defendant had a duty to exercise its contractual discretion honestly and not for pretextual or improper purposes.

119.    Defendant violated that duty by invoking purported "funding" or project-based justifications that were false, while continuing the project and hiring replacements.

120.    Defendant further acted in bad faith by failing to provide truthful explanations and by manipulating internal processes to remove Plaintiff.

121.    These actions deprived Plaintiff of the benefit of his bargain.

122.    Plaintiff suffered damages as a result.

### COUNT IX – Wrongful Discharge in Violation of Public Policy (South Carolina)

123.    Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

124.    Plaintiff was discharged or effectively terminated for asserting rights protected under South Carolina public policy, including rights related to disability accommodation, wage protection, and medical leave.

125.    South Carolina public policy prohibits termination for exercising statutory rights or for refusing to submit to unlawful or discriminatory treatment.

126.    Defendant's actions in removing Plaintiff following his injury, complaints, and requests for accommodation violated these clearly established public policies.

127. Defendant's conduct was willful, intentional, and in reckless disregard of Plaintiff's rights.

128. As a direct and proximate result, Plaintiff suffered damages.

### COUNT X – Negligent Supervision and Retention

129. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

130. Defendant employed or retained individuals who exercised authority over Plaintiff, including Colon.

131. Colon engaged in conduct that created an unreasonable risk of harm, including harassment, intimidation, and interference with Plaintiff's employment.

132. Defendant knew or should have known of Colon's conduct through repeated complaints and reports.

133. Defendant failed to take reasonable steps to supervise, discipline, or remove Colon.

134. Defendant's failure made Plaintiff's harm foreseeable.

135. As a direct result, Plaintiff suffered economic and emotional damages.

### COUNT XI – Intentional Infliction of Emotional Distress

136. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

137. Defendant, through its agents, engaged in extreme and outrageous conduct, including repeated threats, intimidation, and removal of Plaintiff under knowingly false pretenses.

138. Defendant, through its agents, engaged in extreme and outrageous conduct, including repeated intimidation, threats of job loss, and removal of Plaintiff under knowingly false and shifting pretenses.

139.   Defendant intended to cause emotional distress or acted with reckless disregard of the likelihood of causing such distress.

140.   Plaintiff suffered severe emotional distress as a result.

141.   Defendant's conduct was the proximate cause of Plaintiff's injuries.

## COUNT XII – South Carolina Payment of Wages Act

142.   Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

143.   Plaintiff earned wages within the meaning of the South Carolina Payment of Wages Act.

144.   Defendant failed to pay wages due at separation, including all compensation owed at the time of termination.

145.   Alternatively, if Defendant contends Plaintiff remained employed, Defendant failed to pay wages owed during that period.

146.   Defendant failed to provide proper notice and payment as required by law.

147.   As a result, Plaintiff is entitled to recovery of unpaid wages, statutory remedies, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this court grant him a jury trial on all those issues so triable and also respectfully requests that this Court enter judgment in his favor and award all legal and equitable relief necessary to make him whole and to remedy Defendant's unlawful conduct, including but not limited to: 1). back pay; 2). front pay; 3). compensatory and punitive

damages 4). unpaid wages; 5). Instatement of attorneys' fees and costs; 6). interest, and 7). any

further relief the Court deems just and proper.

**(REMAINDER OF PAGE LEFT BLANK; SIGNATURE BLOCK ON NEXT PAGE)**

**RESPECTFULLY SUBMITTED:**

**The Whitsitt Law Firm**
/s Michael A. Whitsitt
Fed. Bar Number #12505
78 Folly Road Suite B9
#1405
Tele:   8435487551
Email:
Michael@WhitsittLawfirm.com
Charleston, South Carolina 29407
*Attorney for Plaintiff*

March 27, 2026